# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3763-20

STATE OF NEW JERSEY
IN THE INTEREST OF A.W.,
a Juvenile.

_____

Submitted February 2, 2022 – Decided March 7, 2022

Before Judges Whipple, Geiger, and Susswein.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket Nos. FJ-07-0388-21 and FJ-07-0508-21.

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for appellant (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals the July 23, 2021 Family Part order denying the prosecutor's application to transfer jurisdiction of this juvenile

delinquency matter to the Law Division pursuant to N.J.S.A. 2A:4A-26.1. That process is commonly referred to as "waiving" a juvenile over to adult criminal court. A.W.[1] is charged as a juvenile with carjacking, unlawful possession of a weapon, possession of a weapon for an unlawful purpose, and conspiracy to commit carjacking. He was seventeen years old at the time he allegedly committed these offenses.

After carefully reviewing the record in light of the applicable legal principles, we are constrained to reverse and remand the matter for a new juvenile waiver hearing in the Family Part. The written statement of reasons submitted by the prosecutor was flawed and was not properly approved within the prosecutor's chain of command. Additionally, in weighing the statutory factors that militate for and against waiving the prosecution over to the adult criminal court, the Family Part Judge appears to have substituted her own judgment for that of the prosecutor. Given the import of the waiver decision to the interests of both the juvenile and the public, we deem it prudent to remand for a new hearing to address deficiencies in the process that resulted in the Family Part judge denying waiver. We believe a remand is necessary to ensure

---

[1] We use initials to protect the identity of the juvenile involved in this case. See R. 1:38-3(d).

that the waiver decision is based on complete and accurate information, affording appropriate deference to the prosecutor's exercise of discretion in weighing the relevant factors under the statutory framework.

## I.

We discern the following pertinent facts and procedural history from the record. In doing so, we are mindful that A.W. has not yet been tried and is presumed innocent.

On the morning of August 11, 2020, the owner of a black Jeep Cherokee reported to the Verona Police Department that his vehicle had been stolen from his driveway. Later that same morning, South Orange Police Department officers responded to a report that an Audi Q5 had been stolen during a carjacking incident. The owner of the Audi stated that he had noticed a black Jeep Cherokee when he stopped at a bank and later when he arrived at a Maplewood day care facility to drop off his three-year-old son. The Jeep Cherokee pulled in front of the Audi and blocked it. A young black male wearing a dark short-sleeved shirt exited the Jeep, displayed a black handgun, and demanded, "give me everything you got." The gunman then entered the Audi Q5 and drove away in the same direction as the Jeep. Fortunately, the

3

victim was able to remove his three-year-old child from the Audi before it sped off.

The carjacked Audi was recovered in Newark following a police pursuit and crash. Video provided by bystanders shows a young black male exit the Audi and enter the passenger side of the Jeep. The Jeep was later recovered in Newark. Police found latent fingerprints in both stolen vehicles.

The State Police Automated Fingerprint Identification System (AFIS) established that A.W.'s fingerprints were found in both stolen vehicles, and that co-defendant Jeremy Delgado's[2] fingerprints were found in the Jeep Cherokee. The owners of the Audi and the Jeep told police that they do not know A.W. or Delgado and did not give them permission to use their respective vehicles.

On August 19, 2020, A.W. was taken into custody and charged as a juvenile with first-degree carjacking, N.J.S.A. 2C:15-2(a)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and second-degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:15-2(a)(2). The prosecutor later filed an additional juvenile delinquency complaint charging A.W. with third-degree theft of the Jeep

---

[2] Delgado is an adult and is not a party to this waiver litigation.

Cherokee, N.J.S.A. 2C:20-2(b)(2)(b). Delgado was charged by complaint-warrant and later indicted for the same offenses.

On October 8, 2020, the State filed a notice of motion for jurisdictional waiver to adult court and provided a written statement of reasons supporting the motion. The statement of reasons explained that A.W. had previously been arrested for various offenses, been placed on probation, violated probation three times between May 2019 and January 2020, and had bench warrants issued for his non-appearance. The initial statement of reasons also represented that A.W. had previously served a custodial disposition in a state juvenile facility.

On December 9, 2020, the Family Part judge held a status conference at which A.W. objected to the State's waiver motion and submitted documentation in opposition. The defense noted that the prosecutor's original statement of reasons had not been "approved by the County Prosecutor and/or the [p]rosecutor's designee before submission of the request for waiver by the assigned assistant prosecutor to the [c]ourt," as required by N.J.S.A. 2A:4A-26.1(a).

On December 31, 2020, the State filed a supplemental submission on its waiver motion and sought joinder of the two juvenile delinquency complaints.

5

In response to A.W.'s objection that neither the County Prosecutor nor a designee had approved the initial statement of reasons, the State explained,

> the waiver was decided after the following steps: the undersigned [assistant] prosecutor reviewed the file and the[n] spoke with the victim; the undersigned prosecutor presented this case to the undersigned's two immediate supervisors of the Special Prosecutions Unit, who after discussing the case individually, agreed this matter should be waived . . . from the Family Court to Criminal Court; this matter was explained to the Chief Assistant Prosecutor of Major Crimes during several meetings; and following defense counsel's motion, this matter was formally presented to the Chief Assistant Prosecutor solely for his signature, which was approved on December 10, 2020. Contrary to [d]efense counsel's argument that this was presented without care, numerous prosecutors at different levels reviewed and approved this matter for the waiver.

The supplemental filing also stated that A.W. "has numerous prior detentions from his many arrests, and one prior custodial adjudication on May 29, 2019 for [thirty-four] days [committed to a juvenile facility]."

On January 19, 2021, the Family Part judge convened a second status conference at which she granted the State's motion for joinder of the two juvenile complaints without objection.

On May 18, 2021—two days before the scheduled waiver hearing—the State supplemented its initial statements of reasons to address two Individualized Educations Programs (IEPs) dated January 19, 2017 and January

6

17, 2018, and a Treatment Assessment Services for the Courts (TASC)[3] evaluation dated September 28, 2020. The prosecutor's supplemental statement of reasons reads in pertinent part:

> (e)    Special Classification of Juvenile
>
> The State has received two . . . IEP reports that classify the juvenile as being emotionally disturbed which interfered with his learning ability and required Behavioral Disabilities Special Classes. No other disabilities were mentioned. This factor weighs against the waiver of the juvenile.
>
> (j)    Evidence of Mental Health Concerns/Substance Abuse/Emotional Instability of Juvenile
>
> The State has received a TASC evaluation that states that the juvenile has a history of marijuana and opiate use that began at [thirteen] and [sixteen] years of age respectively, and the juvenile has opioid dependence. Additionally, the report stated that the juvenile reported serious depression and serious anxiety as prior psychological problems. This factor weighs against the waiver of the juvenile.
>
> . . . .
>
> The factors in favor of waiver outweigh those which support handling this matter in family court. Specifically, the nature of the offense, wherein the juvenile committed an armed carjacking which involved danger to a three[-]year[-]old child, weigh in

---

[3] The TASC program evaluates defendants for substance abuse problems to determine clinical eligibility and suitability for admission to the Drug Court Program. See State v. Harris, 466 N.J. Super. 502, 541 (App. Div. 2021).

> favor of a jurisdictional waiver. The incident shows a blatant disregard for the value of human life or property.
>
> While the State has reviewed the juvenile's prior history of behavioral and substance problems, as well as the prior history of contacts with the system, the State does not believe this mitigation outweighs the other factors in its analysis . . . .

THE WAIVER HEARING

On May 19 and 20, 2021, the court convened a probable cause and waiver hearing. On the first day of the hearing, the State elicited testimony from South Orange Police Department Detective Frank Auriemma, the lead detective investigating the carjacking incident. Detective Auriemma testified that police obtained two surveillance videos that show the theft of the Jeep Cherokee in Verona, two videos that show the carjacking, and one video that shows the Audi crashing in Newark after the carjacking. One video shows "a Hispanic actor wearing red and white clothing" entering the passenger side of the Jeep and "a tall, thin black male wearing black and white" clothing entering the driver's side. The black male operated the vehicle and reversed out of the driveway.

Another video shows the Jeep following the Audi as it was being operated by its owner. The victim's three-year-old son was in the Audi. The video shows the perpetrator brandishing a handgun and the driver frantically retrieving a

child from the back seat just before the carjacker drives the Audi away. Another video shows police pursuing the Jeep driven by a Hispanic male wearing red and the Audi driven by a young black male. The stolen vehicles were traveling at seventy-three miles per hour on a road with a thirty-five mile per hour speed limit.

Detective Auriemma testified that approximately twenty minutes after the carjacking, the Audi overturned and crashed in Newark. A video shows the driver of the Audi exit the crashed vehicle and enter the passenger side of the Jeep. Police found the Jeep four or five blocks from where the Audi crashed.

On the second day of the waiver hearing, counsel for the State and defendant both consented to admitting into evidence the IEPs and the TASC evaluation. The prosecutor argued there was probable cause to support the waiver application and then elaborated on the State's reasons for seeking waiver in the context of the relevant factors set forth in N.J.S.A. 2A:4A-26.1(c)(3)(a)–(k).[4]

As to the first enumerated factor, N.J.S.A. 2A:4A-26.1(c)(3)(a) ("[t]he nature and circumstances of the offense charged"), the State explained that the nature of the present crimes weighs heavily in favor of waiver because A.W. is

---

[4] We list the eleven statutory factors in section II of this opinion.

charged with carjacking—one of the most serious non-homicide crimes in the penal code—as well as both conspiracy to commit carjacking and using a firearm during the carjacking episode. The State further argued that A.W. led police on a "significant and dangerous chase through South Orange into Newark to avoid apprehension."

As to the second statutory factor, N.J.S.A. 2A:4A-26.1(c)(3)(b) ("[w]hether the offense was against a person or property, allocating more weight for crimes against the person"), the State argued that the present crimes weigh in favor of waiver because they were committed against multiple victims, not just property, and presented a danger to the public.

As to the third factor, N.J.S.A. 2A:4A-26.1(c)(3)(c), (the "degree of the juvenile's culpability,"), the State reasoned that A.W.'s culpability weighs in favor of waiver, arguing that A.W. was more culpable than Delgado because he personally brandished a firearm to commit the carjacking and crashed the stolen car while fleeing.

As to the fourth factor, N.J.S.A. 2A:4A-26.1(c)(3)(d), (A.W.'s "[a]ge and maturity"), the prosecutor argued it was neutral, militating neither for nor against waiver, because the IEPs show that A.W. "does actually seem quite capable. It seems like he is someone who understands his position and the

10

challenges he faces, or he faced at those times, and did understand what he had to do, but was having difficulty getting to that point." The State further argued, as to factor nine, N.J.S.A. 2A:4A-26.1(c)(3)(i) ("[c]urrent or prior involvement of the juvenile with child welfare agencies"), that this factor is neutral.

As to factor ten, N.J.S.A. 2A:4A-26.1(c)(3)(j) ("[e]vidence of mental health concerns, substance abuse, or emotional instability of the juvenile to the extent this information is provided to the prosecution by the juvenile or by the court"), the State acknowledged that A.W.'s mental health and substance abuse issues weigh against waiver. A.W.'s TASC evaluation found that he suffers from a drug dependency involving opiates, depression, and anxiety.

As to factor eight, N.J.S.A. 2A:4A-26.1(c)(3)(h) ("[i]f the juvenile previously served a custodial disposition in a State juvenile facility operated by the Juvenile Justice Commission"), the State conceded that in its original statement of reasons, it had presented and relied on inaccurate information as to A.W.'s prior criminal history with respect to whether he had previously served a custodial disposition. The prosecutor explained:

> As part of the original submission, the State did list all of his prior arrests, for which some were dismissed, as well as ones for which he did receive probation and then subsequent violations of probation. During one of those times, he did have a sentence, or not a sentence, a time at which he was in custody. I apologize. I

11

understand there is no excuse for it. I misread that as being a custodial sentence. So, as part of that, the State did state that that was part of the reason that weighed in favor of a waiver.

The State nonetheless argued at the hearing that ultimately, it did not rely on prior arrests that did not result in adjudications of delinquency. The judge did not accept that argument, responding:

> The second submission by the State that you wish to rely on and that you are arguing based on, I don't have anything for Mr. Fennelly, Mr. Higgins or anyone else that is the designee of the State that indicates that they were apprised that the representations of this young man's prior history were not accurate. And that's a heavy, that's one of the heavy factors for a waiver.
>
> I know you said in your brief that you discussed everything fully with Mr. Fennelly, that he signed off on it, to include that the young man served a custodial disposition in a State facility operated by the Juvenile Justice Commission is just not accurate. And I accept your representation that you didn't understand that to be the case. But it still exists as part of your underpinning for both your original filing on October 8th of 2020, which was shortly before the statute would have expired and then your subsequent filing after being put on notice by the defense that they intended to raise these as significant concerns.
>
> . . . .
>
> If I accept Mr. Fennelly as the prosecutor's designee for this particular matter, I have nothing from October to today that says Mr. Fennelly reconsidered the fact that he didn't get the correct information about

12

this young man's prior history when it was presented to him for his consideration for waiver. Prior history is a significantly weighted factor in the waiver statute. That's my concern.

. . . .

The Court's concern is the lack of detailed presentation of the waiver application itself. And in this instance a second filing unsupported with either an affidavit or certification as to the State's efforts to cure the unintentional errors that it made in filing the initial application in October.

## THE FAMILY PART JUDGE'S RULING

On July 23, 2021, the Family Part judge issued a written opinion, finding probable cause[5] for each of the charged offenses and joining the complaints for waiver purposes. However, the judge denied the State's application for waiver

---

[5] The defense has not cross-appealed the finding of probable cause, which is an essential predicate to waiver. See N.J.S.A. 2A:4A-26.1(c)(2). We note the State on appeal argues that much of the Family Part judge's written opinion denying waiver focuses on what the judge described as "obvious shortcomings" in the State's investigation. The State argues that the judge's criticisms of the investigation show "a serious misunderstanding of a judge's role when reviewing a waiver motion." We need not address the State's argument except to note that once probable cause is established, as it was in this case, evidentiary issues and "legitimate concerns raised as to the limited investigation conducted," to use the judge's phraseology, are not factors bearing on the propriety of the prosecutor's decision to seek waiver to adult court. Such problems are appropriately addressed by the trial court, whether that be in the Family Part or adult Criminal Part.

to adult court. The judge concluded that the State failed to properly analyze statutory factors (e), (g), (h), and (j) and thus abused its discretion.

With respect to factors (g) and (h), the judge reasoned:

> [i]n the State's notice of motion dated October 08, 2020, the State[] includes facts and circumstances in sections (g) and (h) of the statement of reasons that are not in accordance with the clear parameters of N.J.S.A. 2A:4A-26. In addition, the State failed to comply with the requirement that the State's application be approved by the County Prosecutor and/or the Prosecutor's designee before submission of the request for waiver by the assigned assistant prosecutor to the Court.

The judge further noted, "[t]he State erroneously included any and all charges filed against A.W. including charges that have been dismissed and erroneously stated that A.W, served a custodial sentence." The court rejected the State's argument "that it was not incorrect to include prior arrests, concluding without support that 'nowhere does the language (of the statute) state that prior arrests are not to be considered or presented in a waiver.'" The court added:

> There is nothing in the [s]tatutes' plain language that indicates the State should consider and include arrests without adjudication in the analysis. The State eventually acknowledged that its inclusion of this material was erroneous but contends that the errors are on "[of] moment[.]" The State contends that its inclusion and reliance upon A.W. serving a "custodial term" at a Juvenile Justice Commission Facility[] was based on the State's erroneous reading of A.W.'s F.A.C.T.S. history (Family Automated Court Tracking

14

System) believing that time spent by A.W. at the Essex County Detention Center prior to adjudication qualified as a custodial term.

> The alleged failure of the State to understand what constitutes a custodial term in a J.J.C. (Juvenile Justice Commission) facility and the assistant prosecutor's reliance upon same as justification for the State's error is misplaced and the Court finds it[] of significant moment by including this erroneous information [in] allowing Chief Assistant Prosecutor Fennelly to consider and rely upon same as he reviewed the assistant prosecutor's application before submission to the Court compounded the error. The Court finds that the reliance in factors (g) and (h) on incorrect information constitutes an abuse of discretion by the State, whether same was intentional or not. The failure to properly address the juvenile's actual history and lack of custodial dispositions negates the State's position that it properly assessed factors (g) and (h) in either the submission with a signature or without. The documents are exactly the same and both contain erroneous, prejudicial information that the State relied upon and upon which the State determined "weigh heavily in favor of waiver."

With respect to factors (e) and (j),[6] the court noted that despite A.W.'s two IEPs and a TASC evaluation showing that A.W. was emotionally disturbed, required Behavioral Disabilities Special Classes, and has substance abuse and

---

[6] In her written opinion, the judge at one point referred to factor (f), which appears to be a typographical error. The context of the judge's analysis clearly indicates that she was focusing on factor (j). We also note that the judge listed (j) in the conclusion as opposed to (f).

A-3763-20

mental health issues, "the State in three [] one[-]sentence paragraphs concluded that the factors favoring waiver outweigh the foregoing concerns." The court found "that the State's assessment of factors [e] and [j] are lacking in specificity and detail and are conclusory in nature."

On August 26, 2021, the State filed a motion for leave to appeal the order denying jurisdictional waiver. On August 27, 2021, we granted the State's motion. This appeal follows.

The State raises the following contentions for our consideration:

> POINT I
>
> THE COURT BELOW SUBSTITUTED ITS JUDGMENT FOR THE PROSECUTOR'S WHEN IT DENIED THE STATE'S WAIVER MOTION.
>
> A. THE WAIVER STATUTE AND APPLICABLE CASELAW.
>
> B. THE LOWER COURT'S DECISION IS FUNDAMENTALLY FLAWED AND MUST BE REVERSED.
>
> > I. FACTOR G PERMITS CONSIDERATION OF A JUVENILE'S ENTIRE HISTORY OF DELINQUENCY, NOT JUST PRIOR ADJUDICATIONS. REGARDLESS, IN THIS CASE, THE PROSECUTOR MADE CLEAR THAT HE WITHDREW ANY CONSIDERATION OF THOSE PRIOR CONTACTS IN SEEKING WAIVER.

II. THE PROSECUTOR'S INITIAL SUBMISSION OF AN UNSIGNED VERSION OF HIS STATEMENT OF REASONS, AND HIS FINDING THAT FACTOR H WEIGHED IN FAVOR OF WAIVER, WERE REASONABLE, DE MINIMIS MISTAKES QUICKLY CORRECTED.

III. THE PROSECUTOR'S ANALYSIS OF FACTORS E AND J, WHILE PERHAPS NOT AN "ACADEMIC TOME," WAS SUFFICIENT GIVEN THE EVIDENCE A.W. PRESENTED AND THE CHARGED OFFENSES.

IV. THE JUDGE ERRED IN GIVING OVERWHELMING WEIGHT TO HER PERSONAL DISSATISFACTION WITH THE STATE'S INVESTIGATION AND PROOFS.

V. RATHER THAN IMPOSE THE DRASTIC REMEDY OF DENYING WAIVER, THE JUDGE SHOULD HAVE REMANDED THE MATTER BACK TO THE PROSECUTOR TO CURE THE SUPPOSED DEFICIENCIES IN HIS STATEMENTS OF REASONS.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. As our Supreme Court has recognized, "'waiver to the adult court is the single most serious act that the juvenile court can perform' . . . because once waiver of jurisdiction occurs, the child loses all the protective and rehabilitative possibilities available to the Family Part." State v. R.G.D., 108

N.J. 1, 4–5 (1987) (citation omitted). A juvenile charged with committing criminal acts, "if they are proven, usually will be exposed [in adult court] to much more severe punitive sanctions, often including lengthy prison terms and mandatory periods of parole ineligibility." State in the Int. of Z.S., 464 N.J. Super. 507, 513 (App. Div. 2020). In this instance, if jurisdiction is transferred to adult court, A.W. will be subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the carjacking charge, and the Graves Act[7] on the handgun charges. NERA requires that a convicted defendant serve 85% of the prison term before becoming eligible for parole. The Graves Act also requires a term of imprisonment with a minimum term of parole ineligibility. In stark contrast, if A.W. were to instead be tried in juvenile court and adjudicated delinquent, he would not face a mandatory term of imprisonment and parole ineligibility.

Our standard of review in juvenile waiver cases "is whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constituted a 'clear error of

---

[7] The Graves Act is named for Senator Francis X. Graves, Jr., who sponsored legislation in the 1980s mandating imprisonment and parole ineligibility terms for persons who committed certain offenses while armed with a firearm. The term now refers to all gun crimes that carry a mandatory minimum term of imprisonment.

judgment' in all of the circumstances." State in the Int. of J.F., 446 N.J. Super. 39, 51–52 (App. Div. 2016) (quoting R.G.D., 108 N.J. at 15). Furthermore, "the standard of review of the prosecutor's waiver decision is deferential. The trial court should uphold the [prosecutor's] decision unless it is 'clearly convinced that the prosecutor abused his [or her] discretion in considering' the enumerated statutory factors." Z.S., 464 N.J. Super. at 519–20.

Under this deferential standard, a Family Part judge may not substitute his or her judgment for that of the prosecutor. State in the Int. of V.A., 212 N.J. 1, 8 (2012). Rather, the juvenile court conducts a limited, yet substantive, review to ensure the prosecutor made an individualized decision about the juvenile that was neither arbitrary nor abused the prosecutor's considerable discretion. Ibid.; see also State in the Int. of N.H., 226 N.J. 242, 255 (2016) ("[U]nder the new law as well as the old, the prosecutor's decision to seek waiver is subject to review—at the hearing—for abuse of discretion.").

In 2015, the Legislature enacted major revisions to our State's juvenile justice system, including a revamping of the waiver statute. Those reforms took effect in March 2016. L. 2015, c. 89, § 1; Z.S., 464 N.J. Super. at 515–16. "Section 26 of Title 2A:4A was repealed and replaced with new Section 26.1." Z.S., 464 N.J. Super. at 516.

The revised statute retains the deference that must be accorded to the prosecutor's decision to seek waiver.  Id. at 519 (citing N.H., 226 N.J. at 249). Furthermore, and of significant importance in this appeal, the revised statute continues the strong presumption of waiver for juveniles who commit serious acts.  Ibid.  As we noted in Z.S., juveniles who commit serious crimes carry a "heavy burden" to defeat a prosecutor's waiver motion.  Ibid. (citing R.G.D., 108 N.J. at 12).

The statutory revisions that took effect in 2016 list the factors that prosecutors must consider in exercising their discretion to seek waiver to adult court.  Those factors are:

> (a) The nature and circumstances of the offense charged;
>
> (b) Whether the offense was against a person or property, allocating more weight for crimes against the person;
>
> (c) Degree of the juvenile's culpability;
>
> (d) Age and maturity of the juvenile;
>
> (e) Any classification that the juvenile is eligible for special education to the extent this information is provided to the prosecution by the juvenile or by the court;
>
> (f) Degree of criminal sophistication exhibited by the juvenile;

20

(g) Nature and extent of any prior history of delinquency of the juvenile and dispositions imposed for those adjudications;

(h) If the juvenile previously served a custodial disposition in a State juvenile facility operated by the Juvenile Justice Commission, and the response of the juvenile to the programs provided at the facility to the extent this information is provided to the prosecution by the Juvenile Justice Commission;

(i) Current or prior involvement of the juvenile with child welfare agencies;

(j) Evidence of mental health concerns, substance abuse, or emotional instability of the juvenile to the extent this information is provided to the prosecution by the juvenile or by the court; and

(k) If there is an identifiable victim, the input of the victim or victim's family.

[N.J.S.A. 2A:4A-26.1(c)(3).]

In Z.S., we carefully and comprehensively explained the guiding principles governing judicial review of the exercise of prosecutorial discretion in deciding whether a case will be heard in adult or juvenile court. 464 N.J. Super. at 533. As we recognized in Z.S., our Supreme Court has made clear that "the State has an 'affirmative obligation to show that it assessed all the [statutory] factors' concerning waiver, and the court must review this assessment." Ibid. (alteration in original) (citing N.H., 226 N.J. at 251; N.J.S.A.

2A:4A-26.1(b)). The State must provide a written assessment at the time of its waiver motion, laying out the facts it relied on to assess the eleven statutory "factors 'together with an explanation as to how evaluation of those facts support waiver for each particular juvenile.'" Ibid. (quoting N.J.S.A. 2A:4A-26.1(a)).

We emphasized in Z.S. that the sufficiency of the prosecutor's written statement of reasons is vital, and that it "should apply the factors to the individual juvenile and not simply mirror the statutory language in a cursory fashion." Ibid. (quoting N.H., 226 N.J. at 250). We explained,

> [a] fundamental aspect of the statutory procedure is that the prosecutor's reasons for seeking waiver must be expressed in written form, with fair notice to the opposing side. The juvenile's attorney must not be forced to guess why the prosecutor believes a particular factor does or does not apply, and why that factor is comparatively strong, neutral, or weak. The defense lawyer, and the juvenile himself, must be informed about why this momentous decision to waive is being pursued. A fulsome explanation will enable the defense to prepare to counter it, possibly with additional mitigating evidence about the circumstances of the offense or about the juvenile's personal characteristics. Upon learning the prosecutor's reasoning, the defense may seek further mitigating opinions from experts, as well as records of medical or mental health treatment, or additional documents from schools or governmental agencies.
>
> [Id. at 533–34.]

We further emphasized in Z.S. that the statement of reasons "cannot be incomplete or superficial," cannot make "conclusory assertions that are devoid of analysis," and, as math teachers tell their students, must "show the work." Id. at 534. We nonetheless made clear, "[t]his is not to say that prosecutor waiver statements must emulate Victorian novels or academic tomes. They need not elaborate about minutiae." Id. at 535. Importantly, we also acknowledged that "because positive and negative factors will often exist, the prosecutor's ultimate conclusion balancing those offsetting factors may not be amenable to precise articulation." Ibid.

We add that while the significance of the written statement of reasons cannot be overstated, it is not an end unto itself. Rather, it is a means to achieve a just result. The statement of reasons provides the foundation for the waiver hearing. As we noted in Z.S., "[o]ral argument [at the waiver hearing] should not be the first time the defense learns of the prosecutor's reasons" for seeking to try the minor as an adult. Id. at 543. The written statement of reasons, however, does not supplant the hearing, nor render it a perfunctory ritual. So long as the defense has sufficient notice and a fair opportunity to respond to the prosecutor's arguments, a prosecutor is not categorically precluded at the hearing from amplifying, supplementing, or correcting information or argument

contained in the written statement of reasons. We do not apply to the statement of reasons, in other words, the "four corners" rule used, for example, in reviewing the sufficiency of a search warrant application. Cf. State v. Sheehan, 217 N.J. Super. 20, 24 (App. Div. 1987) ("As a general rule, questions concerning the validity of a search warrant hinge upon the information contained within the four corners of the supporting affidavit."); but cf. Z.S., 464 N.J. Super. at 543 (distinguishing State v. Hoffman, 399 N.J. Super 207, 217–18 (App. Div. 2008), a Pretrial Intervention (PTI) case where the prosecutor had "covered the grounds for rejection amply at the hearing before the trial court," even though shortcomings existed in the letter rejecting PTI. In Hoffman, we reasoned that the stakes in a juvenile waiver proceeding are far greater than those at a PTI hearing, and therefore found it inappropriate to remand.).

As we have already noted, the critical process of weighing competing statutory factors "may not be amenable to precise articulation." Z.S., 464 N.J. Super. at 535. The weighing process, moreover, is qualitative. It is "not a mechanical quantitative process." Id. at 542. As we emphasized in Z.S., "[t]o be sure . . . the waiver analysis is not a counting exercise. Some factors can have more importance or probative strength than others." Ibid.

Z.S. makes clear that "[n]o one factor . . . may be treated as dispositive—such as the severity of the charged offense." Id. at 535. Subject to that caveat, we reiterate and stress that under the deferential standard of judicial review we apply, the decision as to how much weight to accord each statutory factor remains vested in the discretion of the prosecutor. So too, the final balancing of factors that militate for and against waiver is a prosecutorial function subject only to limited judicial review under the deferential abuse-of-discretion standard. Accordingly, even if a prosecutor's assessment of a particular factor is erroneous, the net result of the cumulative weighing process may not automatically constitute an abuse of discretion with respect to the final decision whether to waive jurisdiction to adult court. A prosecutorial error with respect to gauging the value of a particular statutory factor, in other words, may be harmless in the sense that correcting the error would not change the ultimate result. We nonetheless caution that any errors must be reviewed carefully for their effect, and when in doubt, a reviewing court may require the prosecutor to reevaluate his or her final qualitative evaluation, taking into account the corrected factor(s).

III.

We next apply the foregoing foundational principles to the matter before us.  We first address the Family Part judge's conclusion that the prosecutor improperly considered A.W.'s juvenile record, factor (g), by accounting for arrests that did not result in an adjudication of delinquency.  The prosecutor made clear at the waiver hearing that it had withdrawn any consideration of arrests that resulted in dismissals.  We decline to address the State's argument on appeal that factor (g) permits consideration of arrests that did not result in adjudication, since the prosecutor essentially abandoned that contention before the motion court by arguing that it was not relying on such arrests.  We leave that statutory construction issue to be decided in a future case where the State actually relies on dismissed juvenile complaints to support its application of factor (g) as militating for waiver.  See Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 301 (App. Div. 2005) ("Although there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies, . . . nevertheless it is well settled that we will not render advisory opinions or function in the abstract.")

As we have noted, nothing in the statutory framework categorically precludes the prosecutor at a waiver hearing from amending or correcting

information or argument contained in the written statement of reasons, so long as the defense has a fair opportunity to respond to the new information or argument. In this instance, we see no prejudice to A.W. by the State's announcement at the hearing that it would focus solely on his prior adjudications of delinquency and probation violations[8] in applying factor (g). Accordingly, the Family Part judge should not have focused on the State's initial reliance on arrests that did not result in an adjudication of delinquency. Rather, the judge should have focused on whether the State abused its discretion in relying on A.W.'s prior adjudications of delinquency and probation violations in determining that factor (g) militates in favor of waiver. Clearly, A.W.'s juvenile record militates in favor of waiver, especially because he is presently charged with carjacking—an aggravated form of robbery—after having previously been adjudicated delinquent for robbery.

We nonetheless recognize that the judge was properly concerned as to whether the State's revised assessment had been reviewed and approved by the County Prosecutor or his designee. It is conceivable that prior to withdrawing its consideration of dismissed juvenile complaints at the waiver hearing, the

---

[8] The record shows that A.W. has been adjudicated delinquent for second-degree robbery and third-degree theft. He also was found to have violated juvenile probation on three occasions.

State had initially given added weight to this factor based on those arrests. We note that review and approval by the County Prosecutor or his designee is required not just for the assessment of individual factors, but also as to the overall balancing of the factors militating for and against waiver. We reiterate the admonition in Z.S. that "[n]o one factor . . . may be treated as dispositive . . . ." 464 N.J. Super. at 535. Rather, it is the totality of relevant factors that determines ultimately whether waiver is appropriate. It thus follows that a significant change to the assessment made in the initial statement of reasons, as occurred at the hearing in this case with respect to A.W.'s juvenile history, must be reviewed and approved by the County Prosecutor or his designee.

Accordingly, as we later explain, on remand, we expect the prosecutor to issue a revised statement of reasons in advance of the new waiver hearing that focuses on A.W.'s delinquency adjudications and probation violations and indicates whether the prosecutor accords low, medium, or high value to this factor in favor of waiver.

We turn next to the mistake made by the prosecutor with respect to factor (h) regarding whether A.W. had previously served a custodial disposition in a State juvenile facility operated by the Juvenile Justice Commission (J.J.C.). In reviewing A.W.'s juvenile court record, the prosecutor who prepared the initial

statement of reasons incorrectly attributed a period of pretrial detention in the county detention center as a custodial disposition. The Family Part judge found this mistake to be "of significant moment." However, this error was identified and corrected at the waiver hearing. As we have noted, the prosecutor's waiver decision is not bound to the four corners of the written statement of reasons. The correction of the prosecutor's initial unintended error, of course, changes the calculus of the totality of relevant factors, but does not, in our view, constitute an abuse of discretion sufficient to justify denial of the State's waiver application.

We next address the Family Part judge's conclusion that the State did not adequately address factors (e) and (j) with respect to the IEPs and TASC evaluation. Those documents had been provided by the defense after the initial statement of reasons was submitted. The judge criticized the State's cursory written supplementation.

Importantly, the prosecutor acknowledged that these evaluations militated against waiver, but concluded that waiver was still appropriate considering all other relevant factors. We reiterate that the weighing process is not a mechanical one and that the prosecutor's assessment of the weight afforded to each factor is entitled to deference.

29

Furthermore, the prosecutor at the waiver hearing elaborated on the significance of those documents. With respect to factor (e), the prosecutor at the hearing stated:

> As the evidence has been presented through the IEP, he was designated as having I think the phrasing is emotionally disturbed, but he ultimately as a result of that was given a special education plan within the Newark school system. I did read [the IEPs] carefully, and I do recognize some of the challenges that the juvenile faced. I would understand that this, with the supplemental submissions of defense counsel would weigh against the mitigation—or would be mitigating would weigh against the waiver. But I also do think that the IEPs are interesting in the sense that, again, it does show that he actually I think is quite aware of what is happening, what's going on. He does seem quite mature in terms of understanding the challenges that he faces and seems to sort of recognize his own problems with them. It's not as though he is completely unaware of what's happening. He knows what he has to do, it's just that he is having difficulty doing it.

With respect to factor (j), the State recognized the significance of the TASC evaluation, acknowledging A.W.'s history of marijuana use that began at age thirteen and opiate use that began at age sixteen. The prosecutor also acknowledged that A.W. had psychological problems in the form of "serious depression and serious anxiety."

Although the judge criticized the State's analysis of these factors as "conclusory," the fact remains that the prosecutor deemed these factors to militate against waiver. In Z.S., we explained,

> [n]or should the statement of reasons ignore or gloss over highly relevant information. If, for example, the defense attorney has presented evidence under factor (j) that the juvenile has mental health concerns, substance abuse problems, or emotional instability, it will not suffice for the statement of reasons to say, without further explanation, that such evidence was "considered" but doesn't matter. The written statement must reasonably address the content of the defense material and explain why it is flawed, inadequately supported, internally contradictory, or otherwise unpersuasive.
>
> [464 N.J. Super. at 534.]

In this instance, the prosecutor is not contesting or discounting the TASC evaluation or IEPs. To the contrary, the prosecutor is accepting them as militating against waiver. Accordingly, less detail is required to explain the prosecutor's analysis of these documents than would be required if the prosecutor had instead contested or discounted them.

The gravamen of the judge's finding of a prosecutorial abuse of discretion is that the State did not accord sufficient weight to factors (e) and (j) in relation to the factors that militate in favor of waiver, such as the severity of charged crimes; the danger posed to public safety, including the danger to a three-year-

31

old child who might unwittingly have been kidnapped and seriously injured in the ensuing crash; and A.W.'s juvenile history, which includes a prior robbery adjudication. That leads us to conclude that the judge did not afford appropriate deference to the prosecutor's exercise of discretion in conducting the qualitative weighing process, but instead substituted her own judgment for that of the prosecutor.

We nonetheless decline to reverse the judge's ruling and order that A.W. be waived over to adult court. We recognize that A.W. is charged with a serious violent crime while armed with a handgun, and that he has previously been adjudicated delinquent for robbery. The State refers to the "obvious imbalance in favor of waiver." We are not satisfied, however, that all of the procedural safeguards prescribed in the waiver statute have been followed. We generally agree with the Family Part judge that the statement of reasons was flawed. The State's position on the reasons for waiver was, metaphorically, a moving target. As a result, it remains uncertain whether the final calculus of factors militating for and against waiver had been properly reviewed and approved by the County Prosecutor or his designee. That approval is an important safeguard within the waiver process to ensure an appropriate and uniform exercise of prosecutorial discretion. Precisely because the standard of judicial review is limited and

32

deferential, it is important that the exercise of prosecutorial discretion is carefully circumscribed with the chain of command of the prosecutor's office.

Given that the stakes are "so momentous," Z.S., 464 N.J. Super. at 513, it is essential to make certain that all procedural and substantive safeguards are adhered to. It is necessary, in other words, to dot all the "i's" and cross all the "t's" before A.W. is made to face adult prosecution for a first-degree NERA offense. The interests of both the juvenile and the public require strict compliance with the waiver statute. We therefore remand to the Family Part for a new waiver hearing.

We instruct that the prosecutor shall prepare a new, comprehensive, and up-to-date written statement of reasons. As to each statutory factor, the prosecutor shall not only indicate whether the fact-sensitive circumstances relevant to that factor militate for or against waiver, or are neutral, but also whether the prosecutor accords low, medium, or high value to that factor. Furthermore, the narrative explanations in the statement of reasons as to each factor shall be sufficiently detailed. Id. at 534 ("The statement of reasons cannot be incomplete or superficial. Conclusory assertions that are devoid of analysis are inadequate."). The statement of reasons, moreover, must be approved in writing by the County Prosecutor or his designee.

33

The new statement of reasons shall be served upon the Family Part court[9] and defense counsel within thirty days of this opinion.  The court shall thereafter schedule a new waiver hearing as soon as practicable.  Because we are essentially wiping the slate clean to address mistakes made by both the prosecutor and the Family Part judge, and because the waiver decision is vested in the discretion of the prosecutor subject to limited judicial review, we offer no opinion on whether A.W. should be tried as a juvenile or as an adult.

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] It is our understanding that the judge who denied the State's waiver application is no longer assigned to the Family Part.  We therefore need not address the State's request that any remand be assigned to a new judge.